## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

GLEN T. JONES, JR.,

       Petitioner,

v.                                        Case No. 8:15-cv-185-T-33TBM

SECRETARY, DEPARTMENT
OF CORRECTIONS,

       Respondent.

_____/

### ORDER

Petitioner Glen T. Jones, Jr., a state of Florida inmate proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) and memorandum of law (Doc. 2).  He challenges his convictions entered in 2007 by the Circuit Court for the Tenth Judicial Circuit, Polk County, Florida.  Respondent's response (Doc. 30) concedes the petition's timeliness.  Jones filed a reply (Doc. 46).  Upon review, the petition must be denied.

### PROCEDURAL HISTORY

Jones was convicted of two counts of unlawful sexual activity with a minor.  (Doc. 40, Ex. 6.)  He was sentenced to 15 years in prison on count one, followed by 15 years of sex offender probation on count two.  (Doc. 40, Ex. 7, pp. 102-05.)  The state appellate court *per curiam* affirmed the convictions and sentences.  (Doc. 40, Ex. 12.)

Jones filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Doc. 40, Ex. 28, pp. 9-147.)  The court denied the motion after

conducting an evidentiary hearing on several claims.  (Doc. 40, Ex. 28, pp. 148-51; Ex. 28b, pp. 565-66.)  The state appellate court affirmed the denial, but remanded for consideration of Jones' two motions to amend or supplement his postconviction motion, which remained pending.  *Jones v. State*, 141 So.3d 574 (Fla. 2d DCA 2014).  Upon remand, the state court summarily denied these motions.  (Doc. 40, Ex. 78.)  The state appellate court *per curiam* affirmed the denial.  (Doc. 40, Ex. 80.)

Jones filed numerous motions to correct illegal sentence under Rule 3.800(a).  (Doc. 40, Exs. 42, 42a, 42b, 55.)  The state court denied or struck these motions.  (Doc. 40, Exs. 43, 44, 45, 56.)  The state appellate court affirmed the state court's orders.  (Doc. 40, Exs. 51, 73, 75); *Jones v. State*, 100 So.3d 692 (Fla. 2d DCA 2012).  Jones also filed several state habeas petitions alleging ineffective assistance of appellate counsel.  (Doc. 40, Exs. 23, 83, 91, 96.)  These petitions were all rejected.  (Doc. 40, Exs. 25, 84, 92, 96a.)

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding.  *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United

States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693.  In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010).  *See also Cullen v. Pinholster,* 563 U.S. 170, 180-81 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

The state appellate court denied relief of Jones' claims without discussion.  The court's decisions warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court:

We now hold that review under § 2254(d)(1) is limited to the record that was

> before the state court that adjudicated the claim on the merits.   Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law.  This backward-looking language requires an examination of the state-court decision at the time it was made.  It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster,* 563 U.S. at 180-81. Jones bears the burden of overcoming by clear and convincing evidence a state court factual determination.  "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

## EXHAUSTION OF STATE COURT REMEDIES; PROCEDURAL DEFAULT

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion.   28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckei*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).  A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last

resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt*, 348 F.3d at 1358. The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004). The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise

the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions.  *Unitea States v. Frady*, 456 U.S. 152, 170 (1982).  The petitioner must show at least a reasonable probability of a different outcome.  *Henderson*, 353 F.3d at 892; *Crawford v. Heaa*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96.  A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892.  This exception requires a petitioner's "actual" innocence.  *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).  To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error.  *Schlup*, 513 U.S. at 327.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> The law regarding ineffective assistance of counsel claims is well settled and well documented.  In *Stricklana v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  According to *Stricklana*, first, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth

> Amendment.    Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).    Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.   Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance."   *Id.* at 690.   However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*   Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."   *Id.*

Jones must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92.  To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.* at 694.   A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested

in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Pinholster*, 563 U.S. at 202 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

## DISCUSSION

**Grounds One And Two**

Jones was charged with two violations of § 794.05, Fla. Stat. This statute provides that "[a] person 24 years of age or older who engages in sexual activity with a person 16

or 17 years of age commits a felony of the second degree." § 794.05(1), Fla. Stat.  Each count alleged that Jones committed the offense "between June 1, 2005 and February 2, 2006."  (Doc. 40, Ex. 5.)

On appeal, Jones asserted fundamental error[1] in that the jury could have convicted him of acts when the victim was 15, which are not prohibited by § 794.05, Fla. Stat. Specifically, he alleged the range of dates in the charging document included dates before the victim's sixteenth birthday.  He noted that the victim testified the first two sexual acts occurred when she was 15 years old.  Jones also contended the general verdict form did not require the jury to find the dates of the offenses.

Grounds One and Two are interpreted as raising the claim Jones presented on direct appeal.  Although Jones now identifies his arguments as federal in nature, they present questions of state law with respect to the propriety of the charging document and verdict form.  State law questions are not cognizable on federal habeas review, even if the petitioner frames such questions as federal ones.  *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (issues of state law do not provide a basis for federal habeas relief, even when couched in terms of federal law).

Moreover, any federal claim now raised by Jones is unexhausted.  On appeal, he presented the claim in terms of state law.  (Doc. 40, Ex. 9.)  State procedural rules do not provide for successive direct appeals.  *See* Fla. R. App. P. 9.140.  Accordingly, any federal claim is procedurally defaulted.  *See Smith*, 256 F.3d at 1138.  Jones does not establish applicability of the cause and prejudice exception to overcome the default.  Jones asserts

---

[1] Jones conceded that the argument was not properly preserved for appellate review.  (Doc. 40, Ex. 9, p. 7.)  However, he asserted that his claim raised fundamental, per se reversible error.  (Id., pp. 7-8.)

in his reply that "[w]hat is represented in this case presents extraordinary and compelling circumstances to allow this court to relax the procedural bar in order to correct the 'miscarriage of justice.'"  (Doc. 46, p. 18.)   However, Jones does not show that the fundamental miscarriage of justice exception applies.   As addressed, this exception requires a petitioner's "actual" innocence.  *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).  *Johnson* explains:

> This exception is exceedingly narrow in scope, as it concerns a petitioner's "actual" innocence rather than his "legal" innocence. *See Calderon v. Thompson,* 523 U.S. 538, 559, 118 S.Ct. 1489, 1502-03, 140 L.Ed.2d 728 (1998); *Murray,* 477 U.S. at 495-96, 106 S.Ct. at 2649 (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995). In addition, " '[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." *Calderon,* 523 U.S. at 559, 118 S.Ct. at 1502-03 (quoting *Schlup,* 513 U.S. at 324, 115 S.Ct. at 865) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected" (internal quotation marks omitted)).

256 F.3d at 1171.  Jones has not met his burden to establish this exception.[2]

Notwithstanding the default, Jones fails to show entitlement to relief on his federal claim.  The victim, H.R., gave birth to a child; DNA testing revealed a greater than 99.99%

---

[2]Jones raises other claims within Grounds One and Two.  He asserts that the trial court's giving of obsolete jury instructions amounted to improper comment on the evidence; that the State's evidence did not show the victim's age to be 16 or 17; that the jury instructions were an incorrect statement of the law; that he was entitled to a jury instruction on his defense; that he was in fact convicted of an uncharged crime in violation of his right to notice of the charges against him; that he was unable to prepare a defense; and that the trial court lacked jurisdiction because the victim's testimony established that only uncharged offenses occurred.  Jones did not raise any of these claims on direct appeal, thereby failing to satisfy the exhaustion requirement. (Doc. 40, Ex. 9.)  Because Jones cannot return to state court to file a successive direct appeal, the claims Jones raises within Grounds One and Two that he did not raise on direct appeal are procedurally defaulted.  Jones does not establish that an exception applies to overcome the default.  Consequently, any such claims are barred from federal habeas review.

chance that Jones was the father.  (Doc. 40, Ex. 1b, p. 243.)  H.R., who was born in 1989, testified at trial that she and Jones had sex at Jones' home when she was 15 years old. (Doc. 40, Ex. 1a, pp. 142, 147.)[3]  However, the State presented evidence of sexual activity between Jones and H.R. after her sixteenth birthday in 2005.  H.R. testified that they had sex numerous times in "late 2006."  (Id., pp. 151-55.)  On direct appeal, both parties indicated that she misstated the year and meant late 2005, as her child was born in 2006. (Doc. 40, Ex. 9, p. 7; Ex. 10, p. 2.)  H.R.'s testimony reflects that she became pregnant in November or December of 2005.  (Doc. 40, Ex. 1a, p. 158.)  Additionally, during a February 27, 2006 controlled call, Jones discussed the date of December 10 with H.R. and asserted that he could not be the father because he and H.R. "did not have any sex for 38 days

---

[3] H.R. gave testimony indicating she was 15 years old when "inappropriate contact" occurred:

Q    Can you remember when that started?

A    I believe it was back in 2005 or - - through 2006.

Q    Do you remember what month?

A    No.

Q    Do you remember how old you were?

A    Sixteen.  Fifteen, 16.

(Doc. 40, Ex. 1a, p. 142.)  She testified further:

Q    Do you remember how long after the first time you guys had sex that the second time happened?

A    No, I don't.

. . .

Q    Do you remember how old you were?

A    Fifteen.

(Id., p. 147.)

before that, and we didn't have any sex for 36 days after that."  (Doc. 40, Ex. 1b, p. 212-13.)[4]  Jones further admitted engaging in sexual activity with H.R. on October 21, 2005.[5]  All of these instances of sexual activity would have occurred after H.R.'s sixteenth birthday.

"Under Supreme Court case law interpreting the Fifth Amendment, a court cannot permit a defendant to be tried on charges that are not made in the indictment against him.  Simply put, a defendant can be convicted only of a crime charged in the indictment."  *United States v. Madden*, 733 F.3d 1314, 1317-18 (11th Cir. 2013) (internal citation and quotation marks omitted).  However, Jones does not establish a federal constitutional violation based on his argument that the charging document and verdict form allowed his conviction for acts not prohibited by § 794.05, Fla. Stat.

"The sufficiency of a state indictment or information is not properly the subject of federal habeas corpus relief unless the indictment or information is so deficient that the convicting court is deprived of jurisdiction."  *DeBenedictis v. Wainwright*, 674 F.2d 841, 842 (11th Cir. 1982).  Under Florida law, a defect in the charging document will not lead to its dismissal unless it "is so vague, indistinct, and indefinite as to mislead the accused and embarrass him . . . in the preparation of a defense or expose the accused after conviction or acquittal to substantial danger of a new prosecution for the same offense."  Fla. R. Crim. P. 3.140(o).  Although the charging document included dates prior to H.R.'s sixteenth birthday, it provided that Jones was charged under the statute prohibiting sexual activity with minors 16 or 17 years old, and expressly stated that the State alleged H.R. was 16 or

---

[4] The context of this statement suggests Jones assumed December 10, 2005 to be the approximate date of conception.

[5] Jones testified at trial that on October 21, 2005, H.R. initiated sex while he was asleep and that when he woke up, he "threw her off" of him. (Doc. 40, Ex. 1b, pp. 258, 262-63.)

17 years old at the time of the offenses.  (Doc. 40, Ex. 5.)  Furthermore, the state appellate court rejected Jones' claim of error in the charging document.  Jones fails to show any deficiency in the charging document that deprived the trial court of jurisdiction.

Nor does Jones show any entitlement to relief due to the "general verdict form."  Jones emphasizes that the jury was not required to make any factual findings concerning the dates of the offenses.  However, the jury found him guilty of both counts of violating § 794.05, Fla. Stat.  The jury was instructed that the State must prove H.R. was 16 or 17 years old.  (Doc. 40, Ex. 1b, p. 300.)  No part of the jury instruction indicates that the jury could consider acts when H.R. was 15 years old to support a conviction. (Id., pp. 299-308.)  Jurors are presumed to follow jury instructions.  *Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001).  Jones fails to demonstrate a federal constitutional violation based on the grounds asserted.  He is not entitled to relief on Ground One or Ground Two.

**Ground Three**

Jones claims that the trial court violated his constitutional right to a jury trial.  He contends the court improperly included on the sentencing scoresheet 160 victim injury points for penetration, resulting in an upward departure sentence based upon facts found by the judge rather than the jury.  Jones cites *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004).  *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490.  *Blakely* clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the

jury verdict or admitted by the defendant."  542 U.S. at 303.

Jones raised this claim in a motion to correct illegal sentence.  (Doc. 40, Ex. 42.)

In rejecting his claim, the state court found:

> Defendant alleges that the imposition of victim injury points was improper as they were not decided by the jury.  The Court disagrees.  Because penetration is not an element of the offense of Sexual Activity with a Child, it is not required to be found by the jury.  Rogers v. State, 963 So.2d 328 (Fla. 2d DCA 2007).  Furthermore, victim injury points are assessed based on a factual determination by the trial judge.  Lowman v. State, 720 So.2d 1105 (Fla. 2d DCA 1998).  At trial, the victim testified she and the Defendant engaged in sexual intercourse on at least two occasions.  Furthermore, an essentially identical claim has previously been raised, and denied.[6] Therefore the Court finds the claim to be successive.  Accordingly, Defendant's claim is **DENIED**.

(Doc. 40, Ex. 45) (court's record citations omitted).

The state appellate court *per curiam* affirmed the denial of this claim.  *Jones*, 100 So.3d 692.  It cited *Allen v. State*, 976 So.2d 1189 (Fla. 5th DCA 2008), which held that no relief was warranted when a trial court could have imposed the same sentence notwithstanding any errors in the scoresheet.  The state appellate court also cited *Williams v. State*, 907 So.2d 1224 (Fla. 5th DCA 2005).  *Williams* provides that under the Criminal Punishment Code,[7] "the sentencing judge is entitled to impose a sentence up to the statutory maximum without having to make any factual findings."  *Id.* at 1225.

Even assuming that the Criminal Punishment Code scoresheet erroneously included

---

[6] It appears that the state court previously denied a similar claim.  (Doc. 40, Ex. 45, Attachment of December 7, 2011 "Order On Defendant's Motion For Rehearing And Order on Defendant's Motion To Correct Illegal Sentence.")  As there is no indication Jones appealed the denial of this claim, it is unexhausted and procedurally defaulted.  Jones does not establish the applicability of an exception to overcome the default.  Notwithstanding the default, to the extent Jones may intend to challenge this previous denial, he shows no entitlement to relief for the same reasons addressed in Ground Three.

[7] The Criminal Punishment Code applies to all felony offenses other than capital felonies committed on or after October 1, 1998.  § 921.002, Fla. Stat.

victim injury points, Jones does not show that the state court's rejection of his claim was contrary to or an unreasonable application of *Apprendi* or *Blakely*.  Jones was convicted of two second degree felonies.  As the state appellate court's order conveys, Florida law provides that the maximum permissible sentence under Florida's Criminal Punishment Code is the statutory maximum sentence.  A second degree felony is punishable by a term of imprisonment not to exceed 15 years.  § 775.082(3)(d), Fla. Stat.

Thus, Jones could have been sentenced to 15 years in prison on each count, regardless of whether the scoresheet included victim injury points.  Because his sentences did not exceed the prescribed statutory maximum term, Jones fails to show any violation of *Apprendi* or *Blakely*.  Jones does not show that the state court's decision was contrary to or an unreasonable application of controlling Supreme Court precedent.  Ground Three warrants no relief.

**Ground Four**

Jones alleges that the trial court violated his federal due process rights by considering his assertions of innocence in imposing sentence.  He claims that the "trial judge specifically stated and called the Petitioner a liar several times, nor any indications of remorse was shown by Petitioner, several times, and that based on those considerations, he was imposing the maximum sentence."  (Doc. 1, p. 9.)

Jones raised a federal issue when he brought this claim in a Rule 3.800(a) motion to correct illegal sentence. (Doc. 40, Ex. 42b.)  But he did not expressly raise a federal claim on collateral appeal.  (Doc. 40, Ex. 49.)  Therefore, the federal claim presented in Jones' habeas petition is unexhausted. *See Cortes v. Gladish*, 216 Fed. App'x 897, 899 (11th Cir. 2007) ("To exhaust state remedies, the petitioner must fairly present every issue

raised in his federal petition to the state's highest court, either on direct appeal or on collateral review.") (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).  State procedural rules do not provide for successive postconviction appeals.  *See* Fla. R. App. P. 9.141. Consequently, Jones' claim is procedurally defaulted.

On postconviction appeal, Jones referred to a portion of his motion to correct illegal sentence that cited a federal decision. (Doc. 40, Ex. 49, p. 4.)  Even assuming that this reference was sufficient to raise a federal claim on appeal, however, the claim remains procedurally defaulted.  When Jones raised this claim in a Rule 3.800(a) motion to correct illegal sentence, he presented the claim as one of vindictive sentencing.  The state postconviction court rejected this claim because it was not cognizable under Rule 3.800(a):

> In his Motion, Defendant raises a single claim: that the Court punished the Defendant for exercising his right to testify.  Defendant alleges the Court imposed a harsher sentence based on a lack of remorse expressed by Defendant at sentencing.  However, the Court finds that claims of trial court error and vindictive sentencing are not cognizable in a motion for postconviction relief.  Ey v. State, 884 So.2d 376 (Fla. 2d DCA 2004); Boyd v. State, 880 So.2d 726 (Fla. 2d DCA 2004); Johnson v. State, 985 So.2d 1215 (Fla. 1st DCA 2008).

(Doc. 40, Ex. 43.)  Jones' motion for rehearing was denied.  (Doc. 40, Ex. 47.)  The state appellate court *per curiam* affirmed the order of denial.  It cited *Guilford v. State*, 88 So.3d 998 (Fla. 2d DCA 2012).  *Guilford* considered a claim that the trial court erred by taking into account the defendant's failure to admit guilt and accept responsibility.  It holds that any error in the court's consideration of factors in imposing sentence is an error in the sentencing process, and that sentencing procedures generally may not be reviewed in a Rule 3.800(a) motion.  *Id.* at 999.  The state appellate court also cited *Steward v. State*, 931 So.2d 133 (Fla. 2d DCA 2006), which holds that claims contesting sentencing

procedure are procedurally barred in a Rule 3.800(a) motion.

A federal habeas petitioner's failure to present a claim in accordance with state procedural rules generally precludes federal habeas review of the claim. *Coleman v. Thompson*, 501 U.S. 722(1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir.2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."). "However, a state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir.2001). A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states that it is relying upon a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion," or in a "manifestly unfair manner." *Id.* (citing *Card v. Dugger*, 911 F.2d 1494 (11th Cir.1990)).

The state court applied a state procedural rule prohibiting an allegation of defects in the sentencing procedure in a Rule 3.800(a) motion to correct illegal sentence. Florida courts consistently apply this rule. *See Guilford*, 88 So.3d 998; *Steward*, 931 So.2d 133. *See also Reese v. State*, 896 So.2d 807, 807 (Fla. 3d DCA 2005) ("[A] vindictive sentencing claim cannot be brought by a motion to correct illegal sentence under Rule 3.800(a)."). The state appellate court approved the postconviction court's application of this procedural rule when it affirmed the order of denial. Accordingly, Jones' argument is

procedurally defaulted because it was rejected on an independent and adequate state procedural ground. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).  *See also Harmon v. Barton*, 894 F.2d 1268, 1273-74 (11th Cir. 1990) (the state appellate court's *per curiam* affirmance of the lower court's ruling based on a procedural bar is a clear and express statement of reliance on an independent and adequate state ground).   Jones does not demonstrate that either the cause and prejudice or fundamental miscarriage of justice exception applies to overcome the default.

Notwithstanding the default, Jones fails to show entitlement to relief on the merits of his claim. The sentencing hearing transcript contains the following:

> THE COURT: Let me just say - - does the State wish to present any evidence at all?

> [THE STATE]: No, Your Honor.

> THE COURT: Okay.  Thank you.  Mr. Jones?

> THE DEFENDANT: I - - I really don't know what to say.  I mean - - a lot of the evidence that I have isn't even presented.   You know I have taped confessions.  I got 26 tapes of this girl talking to me and she confesses on this.  She confesses about breaking in my house.  She confesses about breaking into my room several times.  She admits everything about working with in - - and messing with these other guys and things and her girlfriends men and her sisters boyfriends.  Yet I know three other men that this girl has screwed and that's between 25 and 40 years old.  And I'm the one that turns around and ends up as the victim. I - - I don't understand the system. I really don't.

> THE COURT: Anything else you would like to say?

> THE DEFENDANT: No, Sir.

> THE COURT: You can take that up with the legislature.  The legislature said what you did is a crime; the legislature [has] spoken; the fact that you show absolutely no remorse in this situation.  The fact that you're the father of this woman - - this girl's child - - that you're trying to stand there and tell the jury and tell me that you had nothing to do with this and that there was no - - I

mean she broke in and climbed on top of you and this is the only time that - - that it ever occurred.  I don't buy that.  I don't accept it.  I think you're lying. I'm finding you guilty; adjudicating guilty of having unlawful sexual acts with a minor.  I'm sentencing you to 15 years Florida State Prison on Count One. I'm placing you on 15 years of probation to run consecutive to that in regard to Count Two.  I mean you come in here and don't show any remorse what's so ever [sic].

THE DEFENDANT: I do have remorse.

THE COURT: No, you don't.

THE DEFENDANT: Yes, I do.

THE COURT: I'm not going to argue with you.  I'm imposing court cost in the amount of $373.00 and indigency application fee of $40.00. . . .

(Doc. 40, Ex. 1, pp. 90-91.)  Jones fails to show that the trial court vindictively imposed his

sentence. The Eleventh Circuit Court of Appeals has stated:

> During sentencing, a court "may not weigh the exercise of [Fifth Amendment] rights against the defendant." *United States v. Rodriguez*, 959 F.2d 193, 197 (11th Cir. 1992) (per curiam).   But a court may take into account a defendant's freely offered statements indicating a lack of remorse.  *See id.* ("The sentencing court is justified in considering the defendant's conduct prior to, during, and after the trial to determine if the defendant has shown any remorse through his actions or statements.") *cf. United States v. Barrington*, 648 F.3d 1178, 1197 (11th Cir. 2011), *cert. denied*, – U.S. –, 132 S.Ct. 1066, 181 L.Ed.2d 781 (2012); *United States v. Hill*, 643 F.3d 807, 882-83 (11th Cir. 2011), *cert. denied*, – U.S. –, 132 S.Ct. 1988, 182 L.Ed.2d 833 (2012); *United States v. Mateos*, 623 F.3d 1350, 1367 (11th Cir. 2010).  Just as a jury weighs a defendant's testimony once he waives his Fifth Amendment privilege at trial, a judge may consider a defendant's freely offered allocution regarding remorse during sentencing.

*United States v. Stanley*, 739 F.3d 633, 652 (11th Cir. 2014).   Jones voluntarily provided

statements during the sentencing hearing.  The court disagreed with his version of events

and his statement in support of his sentencing request.[8]  Jones does not establish any

---

[8] The record reflects that the defense asked the court to impose a departure sentence.  (Doc. 40, Ex. 1, p. 90.)

federal constitutional violation for the reasons alleged.   Consequently, Ground Four warrants no relief.

**Ground Five**

Jones claims that trial counsel was ineffective for failing to present an adequate motion for judgment of acquittal.  Although counsel moved for a judgment of acquittal at the close of the State's case, Jones asserts that counsel should have "reiterate[d] this argument . . . where the State's evidence was insufficient to support the jury's verdict at the end of trial . . . and sentencing hearing" because H.R. testified she was 15 years old at the time of the offenses, thus leading to "convictions of the nonexistent crimes."  (Doc. 1, p. 10.)[9]

At the conclusion of the State's case, defense counsel stated:

> Yes, Your Honor.  I would just move, as far as Counts I and II, for judgment of acquittal.
> [H.R.'s] testimony was not clear as far as the time periods involved, although the information alleged is between June 1st, 2005, [and] February 2nd, 2006.  Her testimony, as far as when she testified these occurred, was not very clear.
> There was conflicting testimony as far as how old she was at the time, and I don't know if that was because she couldn't remember or just didn't know, but I don't believe the state's proved the allegations occurred within the time frame other than through inference as far as the paternity of the

---

[9] To the extent Jones attempts to raise a distinct claim in his petition and memorandum of law that counsel was ineffective for not fully investigating case records that would have shown a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), he is not entitled to relief.  It appears Jones raised this allegation in claim 7 of his postconviction motion.  The claim was dismissed as procedurally barred based on the prohibition against raising a claim of ineffective assistance of counsel in a successive postconviction motion when ineffective assistance was also raised in an initial motion.  (Doc. 40, Ex. 15, pp. 150-51.)  The state appellate court affirmed the application of this bar.  The rejection of Jones' ineffective assistance of counsel claim on this independent and adequate state procedural grounds results in its procedural default.  Jones does not establish applicability of an exception to overcome the default.  Notwithstanding the default, the claim presented in Jones' federal habeas petition and memorandum of law is too vague and speculative to warrant relief.  *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).  Furthermore, as addressed in Ground Seven, *infra*, Jones has not established any meritorious *Brady* claim.

child.

But I don't believe there's any direct testimony as far as these acts occurring during that time period.

(Doc. 40, Ex. 1b, p. 249.)  The court denied his motion, finding "sufficient evidence to allow the jury to make the determination."  (Id., p. 250.)

Jones did not raise this claim of ineffective assistance of trial counsel in his postconviction motions.  (Doc. 40, Ex. 14; Ex. 28, pp. 9-147, 170-89; Ex. 28a, pp. 196-307, 309-85; Ex. 28b, pp. 386-435, 437-62; Ex. 60.)  Accordingly, the claim is unexhausted. Jones cannot return to state court and file a successive, untimely postconviction motion. See Fla. R. Crim. P. 3.850(b), (h).  Therefore, the claim is procedurally defaulted.  Jones does not demonstrate the applicability of the cause and prejudice or fundamental miscarriage of justice exception to overcome the default.

Notwithstanding the default, Jones' claim fails on its merits.  Given the trial court's finding that the State's evidence was sufficient to present the charges to the jury, Jones does not establish a reasonable probability that the outcome of the proceeding would have been different had counsel renewed the motion.  See State v. Odom, 862 So.2d 56, 59 (Fla. 2d DCA 2003) ("A trial court should not grant a motion for judgment of acquittal unless the evidence, when viewed in a light most favorable to the State, fails to establish a prima facie case of guilt.").  Jones does not establish that counsel was ineffective for the reasons asserted.  He is not entitled to relief on Ground Five.[10]

**Ground Six**

---

[10] In his reply, Jones raises two new claims for relief.  He argues that the trial court erred in denying his motion for judgment of acquittal, and that appellate counsel was ineffective for failing to raise this alleged error on appeal.  Jones may not bring new claims in his reply.  Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005) )("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'") (citation omitted).

Jones alleges that because counts one and two were identical in the charging document, his convictions violate federal double jeopardy principles.  The third amended information alleges for both counts one and two:

> GLEN T. JONES between June 1, 2005 and February 2, 2006, in the County of Polk and State of Florida, did, on one or more occasions, while 24 years of age or older, engage in sexual activity with [H.R.], a person 16 or 17 years of age, by uniting or penetrating the vagina of [H.R.] with the sexual organ of GLEN T. JONES, contrary to Florida Statute 794.05.

(Doc. 40, Ex. 5.)

Jones raised a double jeopardy claim in a Rule 3.800(a) motion to correct illegal sentence.  (Doc. 40, Ex. 55.)   The state court struck his motion:

> Though Defendant couches his claim in the language of double jeopardy, a review of the Motion indicates that he is actually claiming that the State did not adequately prove multiple sexual episodes within the time frame alleged.  This is not cognizable in a motion pursuant to Rule 3.800(a).  Furthermore, the Court has already addressed this issue in its Order issued on August 23, 2012.[11]
> . . .
> Based on the above, it is ORDERED that:
>
> 1) Defendant's motion is STRICKEN.

(Doc. 40, Ex. 56.)

Jones raised a federal claim in his motion to correct illegal sentence. (Doc. 40, Ex. 55, p. 28.)  It does not appear that Jones raised a federal claim on appeal.  (Doc 40, Ex.

---

[11] Jones attaches an August 22, 2012 order of the state court striking a previous motion to correct illegal sentence, which states: "Though Defendant couches his claim in the language of double jeopardy, a review of the Motion indicates that he is actually claiming that the State did not adequately prove multiple sexual episodes within the time frame alleged.  This is not cognizable in a motion pursuant to Rule 3.800(a)." (Doc. 1-1, p. 73.)  It does not appear that Jones appealed this denial.  Notwithstanding the lack of exhaustion and resulting procedural default, to the extent Jones intends to challenge the state court's August 22, 2012 decision, his claim is without merit for the reasons addressed in Ground Six.

67.)[12]   Even if he did, his claim would still be procedurally defaulted. The postconviction court interpreted Jones' claim as challenging the sufficiency of the evidence against him. It resolved Jones' federal claim by applying a state procedural bar to raising such claims in postconviction proceedings.  Florida courts consistently apply this procedural bar.  *See Childers v. State*, 782 So.2d 946, 947 (Fla. 4th DCA 2001) ("Appellant's challenge to the sufficiency of the evidence was an issue for direct appeal, and therefore not cognizable under rule 3.850."). The state appellate court approved the application of this bar when it *per curiam* affirmed the order striking Jones' motion.  Jones' claim is procedurally defaulted because the state court resolved on an independent and adequate state procedural ground. Jones does not establish the applicability of an exception to overcome the default.

Notwithstanding the default, Jones does not show entitlement to relief.  To the extent Jones challenges the sufficiency of the evidence, his argument fails.  The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime."  *In re Winship*, 397 U.S. 358, 364 (1970). When a petitioner raises sufficiency of the evidence in a § 2254 proceeding, he "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).   Sufficiency of the evidence claims are governed by the substantive elements of a criminal offense as defined by state law.  *Id.* at 324 n.16.

---

[12] Jones had two pending appeals that were considered together.  (Doc. 40, Ex. 65.)  Jones did not raise a double jeopardy claim in an initial brief he filed under case number 2D12-6409.  (Doc. 40, Ex. 71.) The state appellate court considered the appendix to Jones' supplemental motion for reinstatement to be his  initial brief in case 2D12-6268.  (Doc. 40, Ex. 68.)  The appendix raised a double jeopardy claim but page 19 of the appendix is not contained in the record before the Court. (Doc. 40, Ex. 67.)

To establish the offense of unlawful sexual activity with a minor, the State was required to prove beyond a reasonable doubt that H.R. was 16 or 17 years old; that Jones was 24 years or older; and that Jones engaged in sexual activity in which his sexual organ penetrated or had union with H.R.'s vagina.  (Doc. 40, Ex. 1b, p. 300.)  Given the evidence addressed in Grounds One and Two, Jones fails to show that no rational trier of fact would have convicted him beyond a reasonable doubt of two counts of unlawful sexual activity with a minor.[13]

Nor does Jones establish a double jeopardy violation.  "The Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense.'"  *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).  Jones  asserts that the counts were "identical" as described in the charging document.  However, as Jones does not establish that the State was prohibited from bringing a separate charge for each violation of the statute, he fails to establish any double jeopardy violation.

Within Ground Six, Jones alleges that appellate counsel was ineffective for not asserting on direct appeal that his convictions "were from the identical charges for which there was insufficient evidence."  (Doc. 1, p. 12.)  Claims alleging ineffective assistance of appellate counsel are analyzed under the *Strickland* standard.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991).  To establish a claim, Jones must show that appellate counsel's performance was objectively

---

[13] H.R.'s testimony reflects that the instances of sexual activity in late 2005 all involved vaginal intercourse.  (Doc. 40, Ex. 1a, p. 155.)

unreasonable, and that there is a reasonable probability that, but for this performance, he would have prevailed on appeal. *Robbins*, 528 U.S. at 285-86.

Jones alleged in one of his state habeas petitions that counsel was ineffective for failing to raise an error in the charging document that exposed him to double jeopardy. (Doc. 40, Ex. 83, pp. 8-9.)   Liberally construing the claim of ineffective assistance of appellate counsel in his federal habeas petition claim as exhausted, Jones does not show entitlement to relief.[14]  For the reasons addressed, he has not demonstrated a meritorious claim of double jeopardy or insufficient evidence.   Counsel does not provide ineffective assistance for failing to raise a meritless claim.  *See Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) ("Counsel was not ineffective for failing to raise these issues because they clearly lack merit.").   Jones fails to show that the state appellate court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim. Consequently, Ground Six warrants no relief.

**Ground Seven**

Jones asserts that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by (1) withholding information revealing Detective Kelly Wedley's involvement in his case and (2) withholding investigative documentation and recorded statements of H.R. and his daughter, S.J.,[15] during a 2005 investigation that originated from a complaint to the Florida

---

[14] No double jeopardy claim was preserved in the trial court.  However, "[a] claim of double jeopardy constitutes a question of fundamental error that may be raised for the first time on direct appeal, even if not properly preserved." *Delgado v. State*, 174 So.3d 1071, 1073 (Fla. 5th DCA 2015) (citing *Bailey v. State*, 21 So.3d 147, 149 (Fla. 5th DCA 2009)).

[15] S.J., Jones' daughter and H.R.'s friend, testified for the State at trial.

Department of Children and Families ("DCF").[16]

To establish a *Brady* violation, a petitioner must show that: "(1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the State, either wilfully or inadvertently; and (3) the defendant incurred prejudice." *Wright v. Sec'y, Fla. Dep't of Corr.*, 761 F.3d 1256, 1278 (11th Cir. 2014). "A defendant cannot meet the second prong when, 'prior to trial, [he] had within [his] knowledge the information by which [he] could have ascertained the alleged *Brady* material.'" *Id.* (quoting *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1315 (11th Cir. 2005)). The prejudice prong, "also referred to as the 'materiality prong,' is met when 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)). The inquiry asks "'whether the government's evidentiary suppressions, viewed cumulatively, undermine the confidence in the guilty verdict.'" *Id.* (quoting *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 746 (11th Cir. 2010)). This requires the court to "evaluate the effect of each suppressed item on its own and then weigh the cumulative impact of all the suppressed evidence." *Id.* (citing *Kyles*, 514 U.S. at 436 n.10).

## I.

Jones raised a *Brady* claim concerning Wedley in claim 1 of his postconviction motion. Jones alleges that Wedley was involved in evidence collection and broke the chain

---

[16] Jones further asserts that the recordings were destroyed, demonstrating the State's bad faith. The Polk County Sheriff's Office response to Jones' public records request shows that at the time of the 2012 requests, audio tapes from 2005 would have been destroyed in accordance with the Sheriff's Office's records retention schedule. (Doc. 1-2, p. 8.)

of custody of audio recordings.[17]  During postconviction proceedings, he argued that the recording of H.R.'s controlled call was tampered with because two transcripts of the tape are not identical.

At the postconviction evidentiary hearing, counsel testified that he was aware of Wedley's involvement in the case.  (Doc. 40, Ex. 28b, p. 482.)  Counsel further testified an evidence log Jones believed to show a break in the chain of custody was included in discovery.  (Id., pp. 483-84.)  Testimony of Detective Jodee Furlong, who was involved in making the controlled call, reflects that only one tape existed, but two different transcripts were made by the Sheriff's Office and the court reporter.  (Id., pp. 536-37.)

At the conclusion of the hearing, the State moved to deny Jones' motion on the basis that Jones failed to present evidence establishing any of his postconviction claims. (Id., p. 554.)  The state court granted the motion.  (Id., pp. 559-60.)  The state court entered a written order after the evidentiary hearing:

> The Court conducted an Evidentiary Hearing on this matter on March 16, 2012.  Despite calling several witnesses, Defendant presented no evidence to the Court to support his claims.  After Defendant rested his case, the State moved that Defendant's Motion be summarily denied.  The Court granted the State's Motion.

(Id., p. 566.)

The record supports the state court's conclusion that Jones failed to establish a *Brady* violation with respect to Wedley's involvement.  Jones has not demonstrated that the information was exculpatory.  Even assuming that it was, because the defense knew that Wedley was involved and obtained a copy of the evidence log, Jones has not shown that

---

[17] Jones attaches a Polk County Sheriff's Office document, which contains Wedley's name and a notation of audiotape of H.R. and an audiotape of a controlled phone call.  (Doc. 1-2, p. 52.)

the State suppressed the information.  Jones does not demonstrate that the state court unreasonably applied *Brady* or unreasonably determined the facts in denying his claim.[18]

## II.

Jones also alleges that the State failed to disclose documents concerning the 2005 investigation and audio tapes of H.R. and S.J.  Based on the argument in his memorandum of law, Jones' claim is interpreted as alleging that the State failed to provide (1) the DCF report (Doc. 1-2, pp. 31-37); (2) a police report describing the investigation (Doc. 1-2, pp. 40-46); and (3) audio recordings of H.R. and S.J.'s interviews.  Jones alleges that the DCF report lists his ex-wife as the reporter, and that she complained in order to gain custody of their children. The police report reflects that in conducting the investigation, Detective Erika Ashworth of the Polk County Sheriff's Office conducted recorded interviews of H.R. and S.J.  Jones claims that this information is favorable because it reveals that H.R. denied any sexual activity with Jones and shows his ex-wife's motive in allegedly fabricating the complaint.

Jones alleged a *Brady* violation concerning this information in claim 2 of his postconviction motion.  The state court denied it along with the rest of the claims Jones presented at the evidentiary hearing.  Jones also raised a *Brady* violation concerning the DCF report by his ex-wife in claim 10 of his first motion to amend or supplement his

---

[18] To the extent the court's rejection of Jones' claims implicitly found credible the testimony of trial counsel and Furlong, the credibility determination is presumed correct.  *See Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."). Jones does not overcome the presumption of correctness.

postconviction motion.  (Doc. 40, Ex. 28a, pp. 313-15.)[19]  In claim 9 of the motion, Jones

alleged that the documentation constituted newly discovered evidence.  In denying claim

9, the state court found:

> It would appear the Defendant alleges that as the DCF reports reflect the
> victim's  mother [sic], his ex-wife, as the initial reportee to the DCF, this
> somehow proves the report was falsely made.  The excerpt of the report
> provides no indication that the report was made falsely.  To the contrary, it
> would appear that the mother's report was taken very seriously.  The mere
> fact that an investigation from this report might not have resulted in enough
> evidence for an arrest and criminal prosecution does not prove that the report
> was falsely made.[20]  As such, it cannot be said that the DCF reports would
> probably produce an acquittal on retrial.

(Doc. 40, Ex. 78, p. 132.)  In denying his *Brady* claim, the state court found: "As discussed

above, the DCF reports the Defendant references are not favorable, and do not show the

claims were falsely made."  (Id., p. 133.)

Jones also alleged a *Brady* violation concerning the police report and audio

recordings of the 2005 investigation in claim 18 of his second motion to amend or

supplement his postconviction motion.  In claim 17 of that motion, he asserted that the

documentation was newly discovered evidence.  In denying this claim, the court found:

> The Defendant claims the statements made in these audio recordings could
> be used to impeach [H.R. and S.J.].  The statements were made to Detective
> Ashworth, who investigated allegations of sexual abuse.  In the recordings
> the victim denied any inappropriate activity occurring between the Defendant

---

[19] In his memorandum of law, Jones asserts that the state court failed to address the *Brady* claims raised in his motions to amend or supplement his postconviction motion.  (Doc. 2, p. 45.)  He is correct that the state court's first order did not rule on these claims.  However, upon remand, the state court addressed the *Brady* claims raised in motions to amend or supplement.  To the extent Jones attempts, through this portion of his memorandum, to raise any *Brady* claims presented in his motions to amend or supplement that are not addressed within Ground Seven, he has not shown that the state court's rejection of any other *Brady* claim raised in his motions to amend or supplement warrants relief under 28 U.S.C. § 2254(d).

[20] The DCF report Jones supplies in support of his petition indicates that no criminal charges were brought as a result of the investigation and the case was closed.  (Doc. 1-2, p. 44.)

and herself.  The Defendant's daughter stated she did not [sic] any sexually inappropriate behavior was occurring between the victim and her father.

Trial counsel's questioning makes it clear he was aware of the content the Defendant is now trying to claim as newly discovered evidence.  *See* Tr. At 170-72, 191-92.  Even if trial counsel did not know of the existence of the actual recordings themselves, he knew the statements were made, and the Detective they were made to.

The Defendant claims that the police report is somehow proof that his ex-wife falsely reported the allegations.   Although a conclusion by the investigating officer that there was not enough to establish a criminal offense from the allegations does not in itself show the report was falsely made, more important in resolving this claim is the Defendant's statement that his ex-wife has purportedly filed false reports "over and over again, to gain custody of Defendant's (3) three children."  With the knowledge that his ex-wife had filed numerous reports in the past with both the DCF and the Sheriff's office, the Defendant could have exercised due diligence in requesting these reports, not filed as part of this instant case, prior to trial.

(Id., pp. 135-36.)  The court denied Jones' *Brady* claim, stating, "As discussed above in claim 17, trial counsel was aware of the contents of the audio recordings.  Therefore, the Defendant cannot show how he has been prejudiced, even if any evidence was wilfully or inadvertently suppressed by the State."  (Id., p. 136.)

Jones has not established that the State violated *Brady* by withholding the DCF report, the police report, or the audio recordings of H.R. and S.J.'s interviews.  Jones has not demonstrated that the DCF report was exculpatory.  As the state court noted, he fails to demonstrate his ex-wife made any false allegations in filing the complaint.  Morever, even assuming all of the identified information was exculpatory, Jones nevertheless fails to show a *Brady* violation.  In cross-examining H.R., counsel asked about her statements to Detective Ashworth:

Q      Now, we talked about you speaking with Detective Furlong.  Do you remember talking to a Detective Ashworth?

A      It sounds familiar, yes.

Q      And this would have been before you talked to Detective Furlong?  A few months earlier?

A      Correct.

Q      This was a female detective?

A      Yes.

Q      And do you know why she was going out to talk to you?

A      No.  I cannot remember.

Q      And at that time, do you recall her asking you questions about any sexual contact you had with Mr. Jones?

A      I cannot remember.

Q      Do you recall telling her that there was no sexual contact between you and Mr. Jones?

A      I cannot remember.

Q      So you cannot remember ever denying that you had sexual contact with Mr. Jones?

A      Correct.

Q      And this would have been in, I guess, the end of 2005?

A      I cannot remember.

Q      All right.  Obviously - - or make it around December, December 22nd, and you're saying you don't recall speaking with her, or you don't recall what you told her?

A      I don't remember really anything.  I forgot mostly everything because of it being so far and so late in time.

(Doc. 40, Ex. 1a, pp. 170-71.)

S.J. testified at trial that she had suspicions about H.R.'s relationship with Jones.

On cross-examination, she testified:

Q     Now, you said you had tried to report your suspicions to the law enforcement or officers?

A     Yes.  Yes, I did.

Q     Do you remember talking to a Detective Ashworth at one point back in - -

A     I don't remember any names.

Q     A female detective back in November.

A     Yeah.  Yes.

Q     And do you remember her asking you about any suspicions?

A     Yes.

Q     And do you remember denying to her that you had any suspicions?

A     No.

Q     So you told Detective Ashworth - - or you told that female detective in November - - that you had suspicions about what was going on?

A     Yes.

Q     And do you recall ever telling any detective that you didn't think anything was going on or denying that anything was going on?

A     No.

Q     You don't recall it?

A     No.

(Doc. 40, Ex. 1a, pp. 191-92.)

Counsel testified at the evidentiary hearing that he recalled a DCF investigation of Jones, although he did not remember the date, Ashworth's name, or whether he obtained the 2005 recordings.  (Doc. 40, Ex. 28b, p. 485.)  However, the record demonstrates that the defense knew of Ashworth's investigation and her interviews of H.R. and S.J.  In

addition, the State's May 19, 2006 response to Jones' Notice of Discovery, attached to Jones' postconviction motion, lists the DCF case report and provides that "defense counsel may copy, listen to, and/or view audio/video tape recordings at the originating law enforcement agency." (Doc. 40, Ex. 28, pp. 77-80.)  Jones has failed to establish that the State suppressed the identified items.  Accordingly, Jones does not meet the second prong of *Brady.*

Furthermore, even if Jones met *Brady*'s first and second prongs, he would not be entitled to relief because he does not show materiality.  The State presented evidence of Jones' guilt aside from H.R.'s testimony.  Jones' own admissions during his testimony and the controlled call, as well as evidence of the child's paternity, indicate that he at least twice engaged in sexual activity with H.R. when H.R. was 16 years old.  Therefore, he does not demonstrate a reasonable probability that the identified items, either individually or cumulatively, would have changed the outcome of the proceedings.  Jones has not shown that the state court unreasonably applied *Brady* or unreasonably determined the facts in rejecting this claim.  He is not entitled to relief on Ground Seven.[21]

**Ground Eight**

Jones claims that the State violated *Giglio v. United States*, 405 U.S. 150 (1972) by knowingly presenting false testimony and failing to correct it, resulting in a due process violation.  "To make out a valid *Giglio* claim, a petitioner 'must establish that (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently

---

[21] To the extent Jones again raised in his October 2012 postconviction motion (Doc. 40, Ex. 60) any claims under *Brady* or *Giglio v. United States*, 405 U.S. 150 (1972) that are presented in the federal habeas petition,  that motion was stricken because the state Circuit Court entered an order barring Jones from filing any further *pro se* filings.  (Doc. 40, Exs. 58, 62.)  The Circuit Court informed Jones it would not entertain or respond to any motion filed in violation of its order.  (Doc. 40, Ex. 58.)

learned was false testimony; and (2) such use was material-i.e., that there is any reasonable likelihood that the false testimony could have affected the judgment.'" *Ferguson v. Sec'y, Dep't of Corr.*, 580 F.3d 1183, 1208 (11th Cir. 2009) (quoting *Davis v. Terry*, 465 F.3d 1249, 1253 (11th Cir. 2006)).

## I.

Jones appears to claim that H.R. informed law enforcement that the events occurred when she was 16 or 17 years old but falsely testified at trial that she was 15 years old. Jones argues that H.R. reported that she was 16 or 17 years old at the time of the events but that her "trial sworn testimony, revealed that she was 15 years old. . . . Thus negating the information and indictment, police reports, arrest, arrest warrant, and said cause against this Petitioner, as known false testimony by the State." (Doc. 1, p. 15.)

Jones raised a *Giglio* claim concerning H.R.'s testimony in claim 15 of his December 6, 2011 motion to amend or supplement his postconviction motion. (Doc. 40, Ex. 28a, pp. 332-3.) The state court summarily rejected this claim:

> Most of the alleged false testimony appears to be the victim's inability to recall certain details, and the follow-up questions during trial. Such statements to refresh the memory of a witness do not lead to false testimony if a witness then recalls information. Furthermore, the Defendant's allegation that "a true victim would have remembered a factual event, action, location, time, date, or statement made . . . unless it was falsely made," does not show that an inability to recall an exact and specific detail necessarily proves the testimony given on that occasion is false. There are several explanations as to why such an exact and specific detail could not recalled [sic]. Such minor inconsistencies do not show false testimony, and even if they did, there is no reasonable likelihood that such testimony could have affected the judgment of the jury. Furthermore, even if this Court were to accept that this testimony was false, this in no way shows the prosecutor knew the testimony was false and that the victim did in fact recall the information when she was asked.

(Doc. 40, Ex. 78, p. 134.)

The record indicates that H.R. might not have remembered certain details or dates. But, as the state court found, Jones does not show that H.R.'s testimony was false. Furthermore, the record supports the conclusion that, even if the identified portion of her testimony was considered to be false and the State knew it was false, there is not any reasonable likelihood that it affected the judgment given the evidence against Jones through sources other than H.R.'s testimony. Jones does not show that the state court unreasonably applied *Giglio* or unreasonably determined the facts in rejecting this claim.

## II.

Jones alleges that the State violated *Giglio* by presenting false testimony of Detective Furlong. Based on the argument in his habeas petition and memorandum of law, Jones' claim is interpreted as raising the allegations brought in claim 3 of his postconviction motion and claim 11 of his motion to amend or supplement the postconviction motion.

## A.

In claim 3 of his postconviction motion, Jones argued that Furlong provided false testimony concerning the controlled call recording. Jones also alleged that Furlong falsely testified that only two recordings of H.R.–the recordings of the controlled call and a statement by H.R. to Furlong–were made, when the 2005 interview by Ashworth was also recorded.

Jones appears to argue that Furlong's allegedly false testimony demonstrates she tampered with the audio recordings. When played at trial, the controlled call recording ended with Furlong's statement, "All right. This concludes this controlled phone call, and

time is now 2:15." (Doc. 40, Ex. 1b, pp. 218-19.)[22] On cross-examination, defense counsel asked:

> Q    After listening to the tape, I noticed that at the beginning of the tape, it says the time is now 2:03, and at the end of the tape, it says the time is now 2:50.
>
> A    2:50?
>
> Q    Yes.  So that would, I guess, mean, about, what, 47 minutes?
>
> A    Yes, sir.
>
> Q    Do you know if one of those times I would - - or why that is?
>
> A    No, sir.  I don't.  But there was no breaks in between.

(Id., p. 220.)  On re-direct examination, Furlong agreed that she could have misstated the time.  (Id.)

The state court granted an evidentiary hearing on Jones' *Giglio* claim.  Furlong testified that the time was 2:15 and any notation of 2:50 was an error in the transcript. (Doc. 40, Ex. 28b, pp. 533-34.)  The state court rejected Jones' claim, finding that he failed to present any evidence.  The record supports this finding.  Even assuming a misstatement in the recording or in her testimony about whether the tape ended at 2:15 or 2:50, Jones has not demonstrated that Furlong testified falsely.

Nor does Jones show that Furlong falsely testified that two, not three, recordings of H.R. were made.  When asked at trial whether the recording of the controlled call was the only recording made, Furlong responded that a recording of H.R.'s statement also existed. (Doc. 40, Ex. 1b, p. 219.)  Furlong testified at the postconviction evidentiary hearing that

---

[22] The transcript of the call prepared by the Polk County Sheriff's Office states that Furlong indicated the time at the end of the call was 2:50.  (Doc. 28, p. 51.)

she was aware of DCF's involvement, but that she did not know Ashworth had a prior case. (Doc. 40, Ex. 28b, pp. 541-42.)  Jones fails to show that Furlong was aware of a recording by Ashworth in 2005.  He does not show that the State presented or failed to correct false testimony.  Finally, even if Furlong's testimony was false and the State was aware it was false, Jones does not show it to be material.  Jones has not determined that the state court unreasonably applied *Giglio* or unreasonably determined the facts in rejecting this claim.[23]

## B.

Jones also asserts that Furlong testified falsely about the initiation of his case.  He first raised this claim during the evidentiary hearing on claim 3 of his postconviction motion. (Doc. 40, Ex. 28b, pp. 508-09.)  Jones also raised this argument in claim 11 of his motion to amend or supplement the postconviction motion.  There, he further argued Furlong gave false testimony that she was the only officer and DCF was not involved.

At trial, Furlong testified about her assignment to the case:

Q      How do you receive cases?  Do they just - - are they delivered by mail, or how - - what's the process?

A      Normally a deputy sheriff who's working the road will make contact with the reportee or whoever reports a crime.  They make an initial report, and then it gets forwarded up to us for follow-up.

Q      Is that what happened in this case?

A      Yes, sir.

(Doc. 40, Ex. 1b, pp. 204-05.)  Furlong further testified that she was assigned to Jones' case on February 16, 2006.  (Id., p. 204.)

---

[23]   To the extent the court's decisions on *Giglio* claims concerning Furlong rest on an implicit determination that Furlong's testimony was credible, Jones does not overcome the presumption of correctness afforded to this determination.

When Jones raised the argument in claim 3 of his postconviction motion, the state court denied it after the evidentiary hearing, finding that he presented no evidence to establish any of his claims.  The state court summarily denied the allegation brought in his motion to amend or supplement the postconviction motion:

> The Defendant claims Detective Furlong testified falsely by stating in this case, as with the usual method she receives cases, a deputy sheriff made contact with the reportee to take an initial report, which is then forwarded to her.  The Defendant appears to take issues with two separate reports, one dated February 9, 2006, where the reportee was Peace River; and the other being the alleged newly discovered evidence in claim 9, with a date of November 7, 2005, the reportee of which was the victim's [sic] mother.  The Defendant does not allege that Detective Furlong testified the initial reportee was Peace River.  As such, it would appear from the Defendant's own allegations that Detective Furlong did not testify falsely.

(Doc. 40, Ex. 78, p. 133.)

Jones does not show entitlement to relief.  As addressed, law enforcement investigated H.R.'s relationship with Jones following a November 2005 report but closed the investigation.  Jones' attachments to his postconviction motion reflect that another report was made in February 2006.  (Doc. 40, Ex. 28, pp. 55-56.)

As the state court's order indicates, however, Jones fails to show that this proves Furlong's testimony was false.  He does not establish that Furlong was in fact involved in the case prior to February 16, 2006.  Contrary to his assertions, Furlong did not testify concerning DCF's involvement in the case, reference any specific report in her testimony, testify that she was the only officer involved, or state that H.R. was the only person to report the allegations.  She merely testified that she was assigned to the case on February 16, 2006 and that an initial report was forwarded to her for further action.  Furthermore, even if her testimony was false and the State knew it was false, Jones does not establish

that it was material.  Accordingly, he does not show that the state court unreasonably applied *Giglio* or unreasonably determined the facts in denying his *Giglio* claims concerning Furlong.

### III.

Jones asserts that S.J. "factually lied throughout her trial testimony." (Doc. 1, p. 15.) In his memorandum, Jones asserts that S.J. gave perjured testimony about (1) her address; (2) whether the residence was a house or a trailer; (3) her friendship with H.R.; (4) whether she ever heard any noise when she believed Jones and H.R. were engaging in suspicious activity; and (5) details of an incident in which H.R. put suntan oil on Jones.

Jones raised these allegations in ground 19 of second motion to amend or supplement his postconviction motion.  The state court denied his claim because Jones failed to demonstrate false testimony:

> In claim 19 the Defendant alleges a *Giglio* violation based on alleged false testimony when the victim, and his daughter, testified they could not recall making a statement to Detective Ashworth.  The Defendant has not alleged that they did in fact remember the information at trial, merely that they had recalled the information at an earlier time.  As explained above in claim 17, this was not false testimony if they truly did not recall.  Claim 19 is **DENIED**.

(Doc. 40, Ex. 78, p. 136.)

Jones has not established that the State violated *Giglio* through the presentation of S.J.'s testimony.  The police report listed a different address than that provided by S.J. at trial.  (Doc. 1-2, p. 42; Doc. 40, Ex. 28a, p. 185.)  Even characterizing S.J.'s trial testimony about her address as false and assuming that the State knew it to be false, Jones shows no *Giglio* violation.  He does not establish that this minor discrepancy was material.

Additionally, the police report indicates that S.J. told Ashworth that one time, H.R.

agreed to put suntan oil on Jones.  (Doc. 1-2, p. 43.)  At trial, S.J. provided more details about the incident, testifying that Jones would have H.R. put suntan oil on him and he would "pull her" into the bedroom to do this.  (Doc. 40, Ex. 28b, p. 188.)  Jones has not established, based on any alleged inconsistency between the report and the testimony, that S.J. testified falsely.  To the extent S.J. gave more information at trial, that such information was absent from the report does not establish that S.J.'s trial testimony was perjured. Moreover, even if Jones had established this aspect of S.J.'s testimony to be false and established that the State knew it was not true, he does not show that it was material.

Although Jones asserts that the police report is inconsistent with S.J.'s trial testimony, the three other aspects of S.J.'s trial testimony about which Jones complains were either not addressed in the police report or were described in a manner not inconsistent with S.J.'s trial testimony.  (Doc. 1-2, pp. 40-44; Ex. 28a, pp. 183-93.)  Jones has not demonstrated that these portions of S.J.'s testimony were false.  Finally, even assuming that Jones demonstrated these parts of her testimony to be false and that the State had knowledge of this, Jones has not shown that the testimony was material.

Accordingly, Jones fails to demonstrate that the state court unreasonably applied *Giglio* or unreasonably determined the facts in denying his claim.  Ground Eight warrants no relief.[24]

**Ground Nine**

Jones asserts that the trial court violated his federal due process rights by failing to

---

[24] Jones raises new claims in his reply, alleging that the prosecutor violated discovery rules; that the trial court erred in not conducting a hearing in accordance with *Richardson v. State*, 246 So.2d 771 (Fla. 1971); that evidence concerning the DNA evidence had been concealed and was erroneously admitted at trial; and that the state court violated his constitutional right to have counsel appointed at certain hearings.  Jones is precluded from raising new claims in his reply.  *Herring*, 397 F.3d at 1342 .

review his postconviction claims of newly discovered evidence. The record reflects that the state court ruled on his amended postconviction motions, which contained these claims, after it already denied his initial postconviction motion. Federal habeas relief is only available on the basis that a prisoner is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Jones' claim concerning the procedures utilized in state court postconviction proceedings cannot provide federal habeas relief because it raises no constitutional challenge to the validity of his conviction. *See Carroll v. Sec'y DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009) ("[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment–*i.e.,* the conviction itself–and thus habeas relief is not an appropriate remedy."); *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief.") (citing *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987)). Jones is not entitled to relief on Ground Nine.

Accordingly, it is

**ORDERED** that Jones' petition for writ of habeas corpus (Doc. 1) is **DENIED**.[25] The Clerk is directed to enter judgment against Jones and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

---

[25] Jones seeks an evidentiary hearing. An evidentiary hearing is not warranted. *See Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1295 (11th Cir. 2015) ("[B]efore a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record."); *Henry v. Warden, Ga. Diagnostic Prison*, 750 F.3d 1226, 1232 (11th Cir. 2014) ("Henry is not entitled to an evidentiary hearing on the merits of his claim of juror misconduct because he procedurally defaulted that claim.").

It is further **ORDERED** that Jones is not entitled to a certificate of appealability (COA).  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a COA.  *Id.*  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).  To make such a showing, Jones "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  Jones has not made the requisite showing in these circumstances.  Finally, because Jones is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** at Tampa, Florida, on April 26, 2016.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Glen T. Jones, Jr.
Counsel Of Record